**LAW OFFICE OF GREGORY PEACOCK**
Gregory Peacock, ESQ. (SBN. 277669)
4063 Birch Street, Suite 100
Newport Beach, CA 92660
Telephone: (949) 292-7478
Email: gregorypeacockesq@gmail.com

Attorney for Plaintiff Andrew White

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW WHITE, | Case Number: |
| Plaintiff, | Complaint For Damages For: |
| vs. | 1. False Arrest (U.S. Const. Amend 4 via 42 § 1983); |
| COUNTY OF LOS ANGELES; and DOES 1 through 10, inclusive, | 2. Failure to Provide Medical Care to Arrestee / Condition of Confinement (U.S. Const. Amend. 14 via 42 § 1983); |
| Defendants. | 3. Municipal (*Monell*[1]) Liability – Unlawful Custom, Practice and/or Policy (42 U.S.C. § 1983) / Municipal (*Monell*) Liability – Inadequate Training (42 U.S.C. § 1983) |
| | 4. False Arrest (California Law); |
| | 5. Negligence (California Law); |
| | 6. Violation of Cal. Gov't Code § 845.6 – Failure To Provide Immediate Medical Care |

---

[1] *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

COMPLAINT FOR DAMAGES
1

**COMES NOW** Plaintiff Andrew White and shows this honorable court the following:

## JURISDICTIONAL ALLEGATIONS

1.  As this action is brought under 42 U.S.C. § 1983, this court has jurisdiction over this case under its federal question jurisdiction pursuant to 28 U.S.C. § 1331.

2.  As the incidents complained of in this action occurred in the County of Los Angeles, State of California, within the territorial jurisdiction of this court, venue properly lies in this court pursuant to 28 U.S.C. § 1391(b)(2).

3.  As plaintiffs' claims brought under California state law arise out of the same transactions and occurrences, and out of a common nucleus of operative facts as the plaintiffs' federal question claims, this court has jurisdiction over plaintiffs' California State law claims under its Supplemental Jurisdiction under 28 U.S.C. § 1367, and otherwise pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

4.  Plaintiff timely filed his California Government Tort Claim for Damages with defendant County of Los Angeles, and filed this instant lawsuit within six months of the rejection of his claim.

## GENERAL ALLEGATIONS

5.  Plaintiff Andrew White is a natural person, who, at all times complained

of in this action, resided in the State of California.

6.  Defendant County of Los Angeles ("COUNTY") is a municipal entity located in the County of Los Angeles, State of California; within the territorial jurisdiction of this court.

7.  Defendants DOES 1 through 6, inclusive, are police officers and/or sworn peace officers and/or supervisors and/or investigators and/ Special Officers and/or a dispatchers and/or Firefighters / EMTs / Paramedics some other public officer, public official or employee of defendant County of Los Angeles and/or with some other public entity, acting in the course of and within the scope of their employment with defendant County of Los Angeles and/or with some other public entity, who in some way committed some or all of the tortious actions (and constitutional violations) complained of in this action, and/or are otherwise responsible for and liable to plaintiff for the acts complained of in this action, whose identities are and remain unknown to plaintiff, who will amend his Complaint for Damages to add and to show the actual names of said DOE defendants when ascertained by plaintiff.

8.  At all times complained of herein, DOES 7 through 10, inclusive, were acting as individual persons acting under the color of state law, pursuant to their authority as sworn peace officers and/or other County of Los Angeles public

COMPLAINT FOR DAMAGES

3

officials[2] and Supervisors and policy making officials, including the Sheriff, Assistant Sheriffs, Fire Chiefs, Supervisory EMTs / Paramedics / Firefighters, Commanders, Captains, Lieutenants or other policy making persons with defendant County of Los Angeles, and were acting in the course of and within the scope of their employment and position with defendant County of Los Angeles.

9. DOES 7 through 10, inclusive, were in some substantial way liable and responsible for, or otherwise proximately caused and/or contributed to the events complained of by plaintiff in this case, such as: a) via supervisory liability (i.e. failure to properly supervise, improperly directing subordinate officers and/or approving unconstitutional actions of subordinate officers), and b) via their failure to train their peace officers, deputies, Firefighters, EMTs and Paramedics to recognize when someone is suffering a serious medical condition / emergency, such as a stroke, and failure to train them on how to distinguish persons suffering from medical emergencies, like strokes, from persons who are intoxicated on drugs and/or ethanol.

10. Plaintiff is presently unaware of the identities of DOES 1 through 10, inclusive, and will amend their Complaint for Damages to add and to show the actual names of said DOE defendants, when ascertained by plaintiffs.

_____

[2] Including the Sheriff for the Los Angeles County Sheriff's Department.

COMPLAINT FOR DAMAGES

4

11.In addition to the above and foregoing, defendants DOES 1 through 10, inclusive, acted pursuant to a conspiracy, agreement and understanding and common pan and scheme to deprive the plaintiff of his Federal Constitutional and statutory rights, as complained of in this action, and acted in joint, concerted and conspiratorial action to so deprive plaintiff of those rights as complained of herein; all in violation of 42 U.S.C. § 1983, and otherwise in violation of United States and California constitutional and statutory law.

12.Said conspiracy / agreement / understanding / plan / scheme / joint action / concerted action, above-referenced, was a proximate cause of the violation of the plaintiffs' federal constitutional and statutory rights, as complained of herein.

13.Said conspiracy / agreement / understanding / plan / scheme / joint action / concerted action, above-referenced, was a legal cause the violation of the plaintiff's federal constitutional and statutory rights, as set forth below.

**<u>FIRST CAUSE OF ACTION</u>**
**VIOLATION OF 42 U.S.C. § 1983**
**Violation of Fourth Amendment Rights**
**Unlawful / Unreasonable Seizure of Person**
**(Against DOES 1 through 6, inclusive)**

14.Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 13, inclusive, above, as though set forth in full herein.

15. At all relevant times, Plaintiff WHITE was a healthy, working adult with no history of neurological impairment and was employed as a mortgage loan officer.

16. On or about December 22, 2024, WHITE was driving home from a family visit when he began experiencing acute and alarming neurological symptoms, including confusion, disorientation, inability to communicate coherently, and a sudden feeling of physical and mental collapse.

17. Unbeknownst to WHITE at the time, he was suffering from a stroke, a medical emergency requiring immediate recognition and time-sensitive intervention to prevent permanent brain injury.

18. As his neurological condition rapidly deteriorated, WHITE became confused, struggled to articulate words, and experienced expressive aphasia, rendering him unable to meaningfully explain his condition or advocate for himself.

19. While in this compromised state, WHITE crashed into several parked vehicles.

20. Defendant DOES 1 through 6, inclusive, responded to the scene. From the outset, Mr. White exhibited obvious signs of severe neurological distress, including nonsensical responses, spontaneous utterances, confusion, and an inability to follow or understand basic questioning.

21. These symptoms are well-known indicators of an acute stroke, widely taught in basic law enforcement and first responder training, including but not limited to confusion, slurred or impaired speech, inability to answer questions appropriately, and altered mental status.

22. Despite these obvious red flags, Defendant DOES 1 through 6, inclusive, failed to recognize or even consider that WHITE was experiencing a serious neurological emergency.

23. Instead, without conducting any meaningful investigation, assessment, or testing to determine intoxication, Defendants DOES 1 through 6, inclusive, assumed and concluded that WHITE was "merely intoxicated."

24. Defendants DOES 1 through 6, inclusive, repeatedly questioned WHITE about alcohol and drug use, despite his inability to respond coherently due to his neurological impairment, and interpreted his medical symptoms as willful noncompliance or impairment from substances.

25. At no point did Defendants DOES 1 through 6, inclusive, conduct sobriety testing capable of confirming intoxication, nor did they rule out alternative medical explanations for WHITE's condition.

26. WHITE was incapable of clearly communicating that he felt gravely unwell because he was actively suffering a stroke.

27. Although Defendants eventually transported Mr. White to a hospital,

they affirmatively misrepresented his condition to medical personnel.

28. Specifically, Defendants DOES 1 through 6, inclusive, told hospital staff that WHITE was intoxicated and had only sustained "minor injuries" from a traffic accident.

29. DOES 1 through 6, inclusive, did not communicate to medical staff that WHITE was showing any signs of suffering from a stroke or other neurological condition, like his confusion, nonsensical responses and inability to follow or understand basic questioning.

30. As a result, the medical staff merely treated his minor physical injuries and cleared him for booking.

31. Had WHITE been given a proper medical screening, which would include the defendant deputies advising the medical staff of WHITE's objective symptoms of a stroke out on the field, the medical staff would have conducted a neurological examination and provide him with the proper treatment.

32. The representations made to medical staff by DOES 1 through 6, inclusive, were false, misleading, and objectively unreasonable, given WHITE's obvious neurological deficits observed at the scene of the crash.

33. Defendants' statements improperly framed and anchored the

hospital's clinical assessment, causing medical staff to rely on law enforcement's inaccurate characterization rather than conducting an emergent stroke evaluation. This is often referred to as "anchor bias."

34. As a direct result of Defendants' misinformation, hospital personnel performed only a superficial evaluation and issued a premature "medical clearance" for jail booking rather than initiating time-critical stroke diagnostics and treatment.

35. WHITE was then transported to jail, where he was placed in a holding cell despite continuing to suffer from an untreated and worsening stroke.

36. While in custody, Mr. White's condition deteriorated further. He remained unable to speak, confused, and neurologically impaired, yet was left without appropriate medical intervention.

37. WHITE then spent several hours laying in his cell and suffering from obvious signs of a stroke;  symptoms which were withheld from medical staff.

38. After laying in his cell for several more hours, suffering irreversible harm, DOES 1 through 6, inclusive, finally transported back to a hospital, where he was diagnosed with a stroke that had progressed to a hemorrhagic stroke due to delayed treatment.

39. By that time, the damage to WHITE's brain was catastrophic and irreversible.

40. WHITE now suffers from permanent neurological deficits, including expressive aphasia, cognitive impairment, and loss of functional capacity, which have devastated his ability to work, communicate, and live independently.

41. Had Defendants acted reasonably, by recognizing the obvious signs of stroke, accurately communicating WHITE's condition to medical providers, and ensuring timely emergency care, WHITE would have had a substantial likelihood of a far less severe outcome.

42. Defendants' conduct was objectively unreasonable, demonstrated deliberate indifference to WHITE's serious medical needs, and directly caused the delay in life-saving medical treatment.

43. Additionally, DOES 1 through 6, inclusive, deprived WHITE of an appropriate medical screening and deviated from law enforcement protocols.

44. California Peace Officers are supposed to be trained to recognize the symptoms of strokes. Any reasonably well-trained California peace officer would have recognized that WHITE was suffering from a stroke.

45. Accordingly, said defendants' seizure of WHITE was done by all of said defendants, in violation of WHITE's right to be free from an unreasonable seizure of his person under the Fourth Amendment to the United States Constitution, and via bystander and via supervisory liability for the same for said Supervisory

personnel defendants and should have reasonably known that their subordinate deputies were depriving the plaintiff of his constitutional rights.

46. Accordingly, the unlawful seizure of WHITE by defendants 1 through 6, inclusive, constituted an unlawful and unreasonable seizure of his person and property, without a warrant, without reasonable suspicion of criminality afoot by WHITE, and without probable cause to believe that the plaintiff had committed a crime.

47. As a direct and proximate result of the actions of defendants DOES 1 through 6, inclusive, WHITE: 1) was substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred medical and psychological costs, bills and expenses, and 3) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $15,000,000.00.

48. The actions by said defendants were committed maliciously, oppressively and in reckless disregard of plaintiff's constitutional rights, sufficient for an award of punitive / exemplary damages against all defendants and each of them, save defendant COUNTY, in an amount to be proven at trial, in excess of $5,000,000.00.

COMPLAINT FOR DAMAGES
11

## SECOND CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1983
### Violation of Fourteenth Amendment Rights
### Deliberate Indifference to Serious Medical Needs
### (Against DOES 1 through 6, inclusive)

49. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 48, inclusive, above, as if set forth in full herein.

50. WHITE had an obvious serious medical condition and an obvious need for immediate medical treatment during the incident complained of in this case, as he was suffering a stroke.

51. When the defendant police officers, deputy sheriffs, and other COUNTY personnel saw WHITE during the incident complained of, he was exhibiting objective symptoms of a stroke.

52. At all times complained of herein, based upon the objective facts available to them, defendants DOES 1 through 6, inclusive, knew, or reasonably should have known, that WHITE was suffering from a serious medical condition and that he needed immediate medical attention, and deliberately failed to get and/or administer medical care for him when he was in their custody.

53. At all times complained of herein, defendants DOES 1 through 6, inclusive, knew, or reasonably should have known, that arrestees and inmates suffering serious medical emergencies while in custody face a heightened risk of

serious injury or death, and that WHITE therefore faced a heightened risk of serious injury or death while in their custody.

54. At all times complained of herein, defendants DOES 1 through 6, inclusive, knew, or reasonably should have known, that ignoring signs and symptoms of a serious medical emergency, such as a stroke, could result in serious in injury or death to the person suffering the emergency, and therefore that ignoring WHITE's signs and symptoms of serious medical emergency could cause him to suffer serious injury or death.

55. Nevertheless, defendants DOES 1 through 6, inclusive, ignored WHITE's objective signs and symptoms of serious medical emergency, and deprived WHITE of medical attention when they omitted material information regarding WHITE's condition when communicating with medical staff. Rather, DOES 1 through 6, inclusive, told medical staff that he was intoxicated and merely needed his treatment to his minor abrasions from the vehicle crash.

56. Defendants DOES 1 through 6, inclusive, failed to obtain or render medical aid for WHITE and arrested him instead.

57. By ignoring WHITE's signs and symptoms of medical emergency and failing to obtain or render medical aid while he was in their custody, defendants DOES 1 through 6, inclusive, were deliberately indifferent to WHITE's serious medical need, in violation of WHITE's Fourteenth Amendment rights.

58. Defendants DOES 1's through 6's, inclusive's, deliberate indifference to WHITE's serious obvious medical emergency proximately caused WHITE's injuries.

59. As a direct and proximate result of the actions of defendants DOES 1 through 6, inclusive, WHITE: 1) was substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred medical and psychological costs, bills and expenses, and 3) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $15,000,000.00.

60. The actions of said defendants DOES 1 through 6, inclusive, and each of them, as complained of herein, were committed maliciously, oppressively and in reckless disregard of plaintiff's constitutional rights, sufficient for an award of punitive / exemplary damages against said defendants, save COUNTY, in an amount to be proven at trial, in excess of $5,000,000.00.

**THIRD CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**DIRECT LIABILITY ACTION / CLAIMS**
**Violation of Fourth and Fourteenth Amendments**
**MUNICIPAL LIABILITY UNDER**
*Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658 (1978)
**(Against COUNTY)**

61. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 60, inclusive, above, as if set forth in full herein.

COMPLAINT FOR DAMAGES
14

62. The actions complained above and below of defendants DOES 1 through 6, inclusive, in falsely arresting WHITE, and in failing to provide WHITE medical care, were done pursuant, and as a result of, the policies, customs, practices, and/or usages of COUNTY:

a)  Deliberately disregarding obvious symptoms of serious medical emergencies, treating all such symptoms as evidence of intoxication, and failing to render medical aid to persons exhibiting symptoms of serious medical emergencies while they are in police custody;

b)  Failing to adequately and properly train deputies to recognize signs and symptoms of serious medical emergencies as distinct from intoxication, including cerebrovascular emergencies such as strokes;

c)  Failing to adequately and properly train deputies to respond to serious medical emergencies, including cerebrovascular emergencies such as strokes;

d)  Failing to adequately and properly train deputies to provide medical staff with information regarding an arrestees' symptoms of a neurological condition, such as a stroke, and to not assume the arrestee is intoxicated;

e)  Failing to adequately and properly train other COUNTY employees such as Custodial Officers, Nurses, Intake Personnel other Medical Personnel to properly screen for and respond to serious medical emergencies, including cerebrovascular emergencies such as strokes.

f)  Failing to adequately and properly train other COUNTY staff in the jails, such as Nurses, Intake Personnel, and other Medical Personnel, to properly screen, classify, identify, respond to, and monitor inmates who exhibit signs and symptoms of serious medical emergencies,

including cerebrovascular emergencies such as strokes.

63. Defendant COUNTY is aware that persons who suffer serious medical emergencies in police custody are at greater risk of serious injury or death.

64. Defendants COUNTY is aware that failing to properly and adequately train law enforcement deputies and police officers and emergency medical personnel to recognize serious medical emergencies as distinct from intoxication can result in serious injury or death to the person suffering the medical emergency.

65. Defendant COUNTY is aware that failing to adequately and properly train jail staff to properly screen, classify, identify, respond to, and monitor inmates who exhibit signs and symptoms of serious medical emergencies, can result in serious injury or death to the person suffering the medical emergency.

66. The aforementioned policies, customs, practices, and usages of defendants COUNTY proximately caused the constitutional violations by defendants DOES 1 through 10, against WHITE.

67. As a direct and proximate result of the actions of defendants COUNTY, Plaintiff was: 1) substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred medical and psychological costs, bills and expenses, and 3) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $15,000,000.00.

## **FOURTH CAUSE OF ACTION**
**False Arrest / False Imprisonment**
**Under California State Law**
**(Against all Defendants)**

68. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 67, inclusive, above, as if set forth in full herein.

69. As complained of above, WHITE was unlawfully seized, detained, arrested and thereafter incarcerated by DOES 1 through 6, inclusive, on December 22, 2024.

70. As complained of above, defendants DOES 1 through 6, inclusive, had neither reasonable suspicion of criminality afoot about WHITE, nor probable cause to believe that WHITE had committed a crime.

71. Defendants DOES 1 through 10, inclusive, and COUNTY are liable to plaintiff for the false arrest / false imprisonment of WHITE, pursuant to Cal. Government Code §§ 815, 815.2(a), 815.6, 820, 820.2, 820.4, 820.8 and otherwise pursuant to the common-law.

72. As a direct and proximate result of the actions of defendants COUNTY and DOES 1 through 10, inclusive, WHITE was: 1) was substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred medical and psychological costs, bills and expenses, and 3) incurred other special and general

damages and expenses, in an amount to be proven at trial, in excess of

$15,000,000.00.

73. The actions by defendants DOES 1 through 6, inclusive, were

committed maliciously and oppressively and constituted despicable conduct;

sufficient for an award of punitive / exemplary damages against all defendants and

each of them, save defendants COUNTY, in an amount to be proven at trial in

excess of $5,000,000.00.

### FIFTH CAUSE OF ACTION
**Negligence**
**Under California State Law**
**(Against all Defendants)**

74. Plaintiff hereby realleges and incorporates by reference the allegations

set forth in paragraphs 1 through 73, inclusive, above, as if set forth in full herein.

75. At the time of the incident complained of herein, WHITE was suffering

a serious medical emergency, a stroke, which required immediate emergency

medical care.

76. At the time of the incident complained of herein, WHITE displayed

numerous objective signs and symptoms of a serious medical emergency.

77. At the time of the incident complained of herein, WHITE was in the

custody of Defendants COUNTY and DOES 1 through 6, inclusive, as an arrestee

and pre-trial detainee.

78. Defendants DOES 1 through 6, inclusive, had a special relationship with

WHITE by virtue of his status as an arrestee.

79. Defendants DOES 1 through 6, inclusive, by virtue of their special relationship with WHITE, owed WHITE a duty to recognize when he was suffering a serious medical emergency, and to render medical care while in he was in their custody.

80. Moreover, DOES 1 through 6, inclusive, owed a duty to WHITE to provide an adequate medical screening. Defendants failed to provide an adequate screening at the jail, as well as when WHITE was taken to the hospital and defendants failed to inform medical staff of WHITE's symptoms of a neurological emergency, including a stroke, and rather told medical staff that he was intoxicated and merely asked medical personnel to treat his minor wounds from the vehicle crash.

81. The signs and symptoms WHITE displayed at the time of the incident would be obvious to any reasonably well-trained peace officer, paramedic or firefighter or EMT person in the position of defendants DOES 1 through 6, inclusive, and would be recognized as symptoms of a serious medical emergency.

82. At all times complained of herein, defendants DOES 1 through 6, inclusive, knew, or reasonably should have known, that WHITE was suffering from a serious medical condition, and it was reasonably foreseeable that

disregarding such a medical emergency would cause WHITE to suffer severe personal injury, including permanent injury or death.

83. Defendants DOES 1 through 6, inclusive, deliberately ignored the signs and symptoms suggesting WHITE was suffering a serious medical emergency in their custody and failed to obtain / render the medical aid he required.

84. Defendants DOES 1 through 6, inclusive, breached their duty of care to WHITE by deliberately disregarding signs and symptoms suggesting that WHITE was suffering a serious medical emergency while in their custody, and by failing to obtain / render the medical aid he required.

85. Defendants DOES 1 through 6, by breaching their duty of care to WHITE, caused WHITE to languish in jail with his medical emergency medical needs unattended. This delay in medical treatment greatly exacerbated WHITE's injuries.

86. By breaching their duty of care to WHITE, as set forth above, Defendants proximately caused damages to WHITE.

87. Defendants COUNTY and DOES 1 through 10, inclusive, are liable to plaintiff WHITE pursuant to Cal. Gov't Code §§ 815, 815.2(a), 815.6, 820, 820.2, 820.4, 820.8, Cal. Civ. Code § 1714, and otherwise pursuant to the common-law.

88. As a direct and proximate result of the actions of the action of

defendants DOES 1 through 6, inclusive, plaintiff WHITE was: 1) substantially

physically, mentally and emotionally injured, and suffered great physical, mental

and emotional injury, distress, pain and suffering; 2) incurred medical and

psychological costs, bills and expenses; 3) incurred other special and general

damages and expenses, in an amount to be proven at trial, in excess of

$15,000,000.00.

### SIXTH CAUSE OF ACTION
**California State Law Claim for Violation of Cal. Gov't Code § 845.6**
**Failure to Provide Immediate Medical Care**
**(Against all Defendants)**

89.  Plaintiff hereby realleges and incorporates by reference the

allegations set forth in paragraphs 1 through 88, inclusive, above, as if set forth in

full herein.

90.  As set forth above, WHITE was arrested by DOES 1 through 6,

inclusive, and taken into custody at the Los Angeles County Jail where he was

incarcerated as a pretrial detainee / inmate in that facility.

91. Moreover, as shown above, defendants DOES 1 through 6, inclusive,

failed to attend to WHITE, and failed to summon medical care for him.

92. As a proximate result of defendants DOES 1 through 6, inclusive,

failing to provide immediate medical care to and to obtain immediate medical care

for WHITE, WHITE suffered debilitating and permanent injuries.

93. Accordingly, defendants DOES 1 through 6, inclusive, breached their

duty of due care that they owed to WHITE under Cal. Gov't Code § 845.6, and were deliberately indifferent to WHITE's obvious medical needs, as said defendants knew of it and disregarded it by failing to take reasonable measures to address it, to wit; to immediately summon medical care for WHITE and provide him with a proper medical screening, which includes providing medical personnel with material information.

94.    As a direct and proximate result of the actions of the action of defendants DOES 1 through 6, inclusive, plaintiff WHITE was: 1) substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred medical and psychological costs, bills and expenses; 3) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $15,000,000.00.

192    In addition, the actions of defendants DOES 1 through 6, inclusive, were done maliciously and oppressively, sufficient for an award of punitive damages in an amount in excess of $5,000,000.00.

**WHEREFORE**, plaintiff prays for judgment as follows:

a)  For a judgment against all defendants for compensatory damages in an amount in excess of $15,000,000.00 for each plaintiff;

b)  For a judgment against all defendants, save COUNTY, for punitive

damages in an amount in excess of $5,000,000.00;

c)  For an award of reasonable attorney's fees and costs;

d)  For a trial by jury; and

e)  Any other relief as this honorable court deems just and equitable.

_/s/  Gregory Peacock_

GREGORY PEACOCK, Lawyer for
Plaintiff Andrew White