**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

*Attorneys for Plaintiff*



# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW WHITE,<br><br>       Plaintiff,<br><br>    vs.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>       Defendants. | Case No.: 2:26-cv-00854-PA-AJR<br>Honorable Percy Anderson<br><br>**OPPOSITION TO MOTION TO DISMISS COMPLAINT**<br><br>Date:  July 13, 2026<br>Time:  1:30 p.m.<br>Crtrm: 9A |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff Andrew White was a healthy, working adult with no history of neurological impairment when, on December 22, 2024, he began suffering a stroke while driving home from a family visit. (Compl. ¶¶ 15–17.) As he grew confused, disoriented, and unable to speak through expressive aphasia, he crashed into several parked vehicles. (Compl. ¶¶ 18–19.) The responding deputies encountered "obvious signs of severe neurological distress," symptoms "widely taught in basic law enforcement and first responder training" as indicators of an acute stroke. (Compl. ¶¶ 20–21.) They conducted no sobriety testing, ruled out no medical

1

cause, assumed he was "merely intoxicated," and arrested him. (Compl. ¶¶ 22–25.) They then told hospital staff he was intoxicated with only minor injuries, omitting the stroke symptoms they had observed; the resulting "medical clearance" sent him to a cell, where he lay for hours as his stroke progressed to a catastrophic hemorrhagic stroke. (Compl. ¶¶ 27–39.) He is now permanently disabled. (Compl. ¶ 40.)

The County moves to dismiss only four of the six claims—the Third (Monell), Fourth (false arrest), Fifth (negligence), and Sixth (Government Code § 845.6)—and does not challenge the underlying constitutional violations alleged against the deputies in the First and Second Claims. Measured against Rule 8's liberal pleading standard, not the heightened proof standard the County implicitly demands, the Complaint states each challenged claim. The motion should be denied, or any dismissal granted with leave to amend.

## II.    STATEMENT OF FACTS

Mr. White was a healthy mortgage loan officer with no history of neurological impairment. (Compl. ¶ 15.) On December 22, 2024, driving home from a family visit, he began experiencing acute neurological symptoms—confusion, disorientation, inability to communicate, and a sudden sense of physical and mental collapse—which, unbeknownst to him, were the onset of a stroke. (Compl. ¶¶ 16–17.) As expressive aphasia set in and he could no longer explain his condition, he crashed into several parked vehicles. (Compl. ¶¶ 18–19.)

Defendant DOES 1 through 6 responded. (Compl. ¶ 20.) From the outset, Mr. White exhibited "obvious signs of severe neurological distress," which the Complaint alleges are "well-known indicators of an acute stroke, widely taught in basic law enforcement and first responder training." (Compl. ¶¶ 20–21.) The deputies failed to recognize or even consider a neurological emergency. (Compl. ¶ 22.) Without any meaningful investigation, assessment, or sobriety testing, and

2

without ruling out a medical cause, they assumed he was "merely intoxicated" and arrested him. (Compl. ¶¶ 23–26, 56.)

Although the deputies eventually took Mr. White to a hospital, they misrepresented his condition, telling staff he was intoxicated with only "minor injuries" while omitting the stroke symptoms they had observed. (Compl. ¶¶ 27–29, 32.) The Complaint alleges this misinformation anchored the hospital's assessment, prompting only a superficial evaluation and a premature "medical clearance" for booking rather than time-critical stroke diagnostics. (Compl. ¶¶ 30–34.)

Mr. White was then taken to jail and placed in a holding cell, where he remained confused, unable to speak, and neurologically impaired. (Compl. ¶¶ 35–36.) He "spent several hours laying in his cell and suffering from obvious signs of a stroke" before, "suffering irreversible harm," he was taken back to a hospital and diagnosed with a stroke that had progressed to hemorrhagic due to delayed treatment. (Compl. ¶¶ 37–38.) He now suffers permanent neurological deficits, including expressive aphasia and cognitive impairment. (Compl. ¶ 40.) Any reasonably well-trained California peace officer, the Complaint alleges, would have recognized the stroke. (Compl. ¶¶ 21, 44.)

## III.    LEGAL STANDARD

Rule 12(b)(6) must be read together with Rule 8, which "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A complaint need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The court considers the complaint's factual allegations "together with all reasonable inferences" from them. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Systems, Inc.,* 637 F.3d 1047, 1054 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

Allegations of material fact are taken as true and construed in the light most favorable to the pleader. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *N. Star Int'l v. Arizona Corp. Comm'n,* 720 F.2d 578, 580 (9th Cir. 1983).

Civil rights actions are governed by Rule 8, and there is no heightened pleading requirement; the Supreme Court has repeatedly rejected attempts by the Courts of Appeals to impose one. Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002); *Leatherman v. Tarrant Cnty.,* 507 U.S. 163 (1993).

## IV.    ARGUMENT

### A.    Plaintiff's Monell Claim Against the County Is Adequately Pled

A plaintiff may establish Monell liability by showing a constitutional violation caused by a policy, custom, or practice of the public entity. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). A policy is a formally adopted rule; a custom is more informal, and liability may rest on a violation resulting from persistent yet informal conduct of public employees. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480 (1986). Liability may also rest on a policy of inaction amounting to a failure to protect constitutional rights. *City of Canton v. Harris,* 489 U.S. 378, 388 (1989); *Oviatt v. Pearce,* 954 F.2d 1470, 1474 (9th Cir. 1992).

The County does not challenge the underlying constitutional violations alleged against the deputies—the Fourth Amendment false arrest (First Claim) and Fourteenth Amendment deliberate indifference to serious medical needs (Second Claim). Those violations are well established: on closely analogous facts, the Ninth Circuit has held that an officer's failure to summon prompt medical care for a post-crash stroke victim mistaken for an intoxicated arrestee can violate the Constitution. *D'Braunstein v. California Highway Patrol,* 131 F.4th 764 (9th Cir. 2025). The only question here is whether Plaintiff has adequately pled a policy,

custom, or training failure that was the moving force behind those violations. He has.

### 1.    Plaintiff Pleads an Unconstitutional Custom in General Terms

"At the pleading stage, [a] plaintiff need not prove the existence of [] a custom, but merely allege sufficient facts to make the claim plausible." *Doe v. Cnty. of San Joaquin,* No. 2:24-CV-00899 WBS CKD, 2024 WL 3697555, at *4 (E.D. Cal. Aug. 7, 2024). The custom need "only be alleged in general terms" because "[i]t is a rare plaintiff who will have access to the precise contours of a policy or custom prior to . . . discovery, and requiring a plaintiff to plead its existence in detail is likely to be no more than an exercise in educated guesswork." *Est. of Osuna v. Cnty. of Stanislaus,* 392 F. Supp. 3d 1162, 1174–75 (E.D. Cal. 2019).

Plaintiff alleges precisely such a custom: that the County maintains a policy or custom of "[d]eliberately disregarding obvious symptoms of serious medical emergencies, treating all such symptoms as evidence of intoxication, and failing to render medical aid to persons exhibiting symptoms of serious medical emergencies while they are in police custody." (Compl. ¶ 62(a).) That custom is alleged in general terms, as *Osuna* permits, and is tied directly to this incident: deputies who treated a stroke victim's symptoms as intoxication and withheld aid. The County's demand that Plaintiff identify a specific prior incident, lawsuit, complaint, or internal-affairs file seeks the very detail *Osuna* and *Doe* hold need not be pled before discovery.

### 2.    Plaintiff Pleads a Failure-to-Train Claim

A municipality "may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights," including a "failure to implement procedural safeguards to prevent constitutional violations." *Oviatt,* 954 F.2d at 1474 (citing *Canton,* 489 U.S. at 388); *Tsao v. Desert Palace, Inc.,* 698 F.3d 1128, 1143 (9th Cir. 2012). A failure-to-train plaintiff must show: (1) he was

LAW OFFICES OF
**DALE K. GALIPO**
CIVIL RIGHTS ATTORNEYS

5

deprived of a constitutional right; (2) the municipality had a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons with whom [its police officers] are likely to come into contact"; and (3) his injury would have been avoided had the municipality properly trained those officers. *Blankenhorn v. City of Orange,* 485 F.3d 463, 484 (9th Cir. 2007).

Plaintiff alleges each element. He alleges the County failed to adequately train its deputies to recognize the symptoms of serious medical emergencies— including strokes—as distinct from intoxication, to respond to such emergencies, and to give medical staff information about an arrestee's neurological symptoms rather than assuming intoxication. (Compl. ¶ 62(b)–(f).) He alleges the County knew that failing to so train "can result in serious injury or death to the person suffering the medical emergency." (Compl. ¶¶ 63–65.) And he alleges those failures were the moving force behind the violation of his rights. (Compl. ¶ 66.)

The County's central argument is that Plaintiff cannot establish deliberate indifference without alleging a pattern of prior similar violations. (MTD 11:5–12, 12:3–16.) But the Supreme Court has recognized that, "in a narrow range of circumstances," a pattern is unnecessary where the consequences of failing to train are "patently obvious." *Connick v. Thompson,* 563 U.S. 51, 63–64 (2011). The paradigmatic example is a municipality that arms its officers but provides no training on a recurring situation they will predictably confront—where the need is "so obvious[] that failure to do so could properly be characterized as deliberate indifference." *Canton,* 489 U.S. at 390 n.10.

Courts in this Circuit have applied that exception to the closely analogous failure to train officers to respond to medical and mental-health emergencies, holding that "[s]erious injuries and death are the obvious and highly predictable consequences of sending untrained and armed officers to respond to mental health crises." *Garcia v. Yuba Cnty. Sheriff's Dep't,* 559 F. Supp. 3d 1122, 1131 (E.D. Cal. 2021). The same logic governs here. Deputies are routinely the first

6

responders to people in acute medical distress, and stroke symptoms—confusion, impaired speech, inability to answer questions, altered mental status—mimic intoxication. (Compl. ¶¶ 20–21.) The predictable result of failing to train officers to distinguish the two, and booking the stroke victim as a drunk, is exactly what the Complaint alleges: catastrophic, irreversible brain injury. (Compl. ¶¶ 38–40.) The County's own motion underscores the point, conceding that distinguishing stroke from intoxication "requires specific officer training." (MTD 13:11–14.) That concession confirms, rather than defeats, the obvious and predictable need for the very training Plaintiff alleges was lacking.

### B.     Plaintiff's False Arrest Claim is Adequately Pled

The County argues that probable cause is a complete defense to the state-law false arrest claim and that the Complaint's own allegations establish probable cause to arrest for driving under the influence. (MTD 12:18–13:26.) That argument fails at the pleading stage for two reasons.

First, the Complaint affirmatively alleges the opposite of probable cause: that DOES 1 through 6 had "neither reasonable suspicion of criminality afoot about WHITE, nor probable cause to believe that WHITE had committed a crime" (Compl. ¶ 70; see also ¶ 46), that the deputies conducted no sobriety testing capable of confirming intoxication and ruled out no medical explanation (Compl. ¶¶ 23, 25), and that the symptoms they observed were "obvious signs of severe neurological distress" and "well-known indicators of an acute stroke" that any reasonably well-trained peace officer would have recognized (Compl. ¶¶ 20–21, 44). These allegations must be taken as true, with all reasonable inferences drawn in Plaintiff's favor. *Erickson,* 551 U.S. at 94; *N. Star,* 720 F.2d at 580.

Second, the County's argument depends on characterizing Mr. White's symptoms as "indistinguishable" from intoxication and resolving in its favor the competing inference that the deputies reasonably perceived intoxication. But the Complaint pleads the opposite—that the signs of stroke were obvious and

recognizable—and the choice between those inferences cannot be made on the pleadings.

The County is wrong that Plaintiff has conceded the point. It contends that, by alleging the deputies failed to distinguish stroke from intoxication, Plaintiff "essentially conceded that probable cause existed based on the officers' reasonable, if mistaken, perception of the facts." (MTD 13:13–18.) Not so. The Complaint's premise is the opposite: that the deputies' perception was objectively unreasonable, because Mr. White exhibited "obvious signs of severe neurological distress" and "well-known indicators of an acute stroke" that "any reasonably well-trained California peace officer would have recognized." (Compl. ¶¶ 20–21, 32, 42, 44, 81.) That distinguishing a stroke from intoxication may require training (Compl. ¶ 44) is not a concession that doing so was reasonable; it is the predicate for Plaintiff's allegation that a competent officer would have recognized the stroke and these deputies unreasonably did not. At most the County identifies a competing inference, which on a Rule 12(b)(6) motion must be drawn in Plaintiff's favor.

The Ninth Circuit confronted nearly identical facts in *D'Braunstein v. California Highway Patrol.* There, an officer arrived at a serious single-vehicle crash, found the driver disoriented, slurred, sweating, and unable to perform field sobriety tests, concluded he was on drugs, and arrested him for driving under the influence—when in fact he was suffering a stroke. *D'Braunstein,* 131 F.4th 764, 766–67 (9th Cir. 2025). The court held a jury could find the officer's perception that the driver was intoxicated rather than in medical crisis "not only wrong, but objectively unreasonable," and stressed that her "subjective belief" of drug use did not matter because "the reason for the crash did not change the need for emergency medical evaluation." *Id.* at 770, 772. Though the court addressed the duty to summon care, its reasoning forecloses the County's premise: whether a reasonable officer confronting a post-crash driver with obvious neurological symptoms would

perceive intoxication rather than a medical emergency is a question of factual impression, not one resolved as a matter of law, least of all on the pleadings.

*Gordon v. County of Orange* reinforces the point. It endorsed *Liscio v. Warren,* 901 F.2d 274 (2d Cir. 1990), where a custodian who "erroneously presumed the cause" of a detainee's symptoms, attributing alcohol-withdrawal symptoms to mere heroin withdrawal, could be held liable because the two conditions share overlapping symptoms that personnel must be careful to distinguish. *Gordon v. County of Orange,* 6 F.4th 961, 971 (9th Cir. 2021). So too here: that stroke and intoxication can present similarly does not make an officer's failure to tell them apart reasonable as a matter of law; it makes the distinction a question of fact.

Authority specific to the probable-cause inquiry confirms the point. Even on a developed summary-judgment record, courts have found that whether an officer had probable cause to arrest for intoxication presents a genuine dispute of material fact. *See Lawman v. City & County of San Francisco,* 159 F. Supp. 3d 1130 (N.D. Cal. 2016). If that question can be triable on a full record, it cannot be resolved against Plaintiff on the bare allegations of the Complaint.

### C.    Plaintiff's Negligence Claim Is Not Barred

The County argues that Plaintiff's negligence claim is barred by the prisoner immunity of California Government Code § 844.6(a)(2), and that *Watson v. State of California*, 21 Cal. App. 4th 836 (1993), channels prisoner medical-care claims through § 845.6. (MTD 13:27–15:4.) That immunity does not require dismissal of the negligence claim as pleaded.

Section 844.6 is not a blanket bar; § 845.6 "creates out of the general immunity a limited cause of action" for the failure to summon immediate medical care. *Castaneda v. Dep't of Corr. & Rehab.,* 212 Cal. App. 4th 1051, 1070 (2013). Where a negligence claim rests on that failure, the entity may be held vicariously liable through §§ 815.2 and 845.6. *See Fidler v. San Mateo County Sheriff's Office,*

9

No. C-04-1404 SC, 2005 WL 522077 (N.D. Cal. Mar. 4, 2005). Plaintiff's Fifth Cause of Action, brought against the County and the deputies and grounded in § 815.2(a), among other provisions (Compl. ¶ 87), encompasses the deputies' failure to summon immediate medical care during the hours Mr. White's obvious stroke went unattended in his cell (Compl. ¶¶ 37–38, 83–85). For the reasons in Section D, those allegations state a viable § 845.6 theory, and the County is not immune from it under § 844.6.

To the extent the negligence claim also rests on the deputies' conduct at the scene (before Mr. White was taken into custody), § 844.6(a)(2) addressed to "injury to a prisoner" does not by its terms reach pre-custody field conduct. At a minimum, the scope of § 844.6 immunity across the distinct phases of conduct alleged here cannot be resolved against Plaintiff on the face of the Complaint, and any portion the Court finds barred should be dismissed only with leave to amend to conform to § 845.6.

### D.    Plaintiff's § 845.6 Claim Is Adequately Pled

The County argues the Sixth Claim fails because (1) it is really a complaint about the quality of care and the accuracy of the deputies' communications to medical staff, which falls outside § 845.6's narrow duty to summon care, and (2) the Complaint concedes the deputies summoned care twice. (MTD 15:5–17:6.) Neither argument supports dismissal.

To state a § 845.6 claim, a plaintiff must allege "(1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care." *Jett v. Penner,* 439 F.3d 1091, 1099 (9th Cir. 2006). Liability is limited to "serious and obvious medical conditions requiring immediate care." *Id.* A hemorrhagic stroke, accompanied by the confusion, inability to speak, and altered mental status the deputies are alleged to have observed (Compl. ¶¶ 20–21, 36–37), is precisely such a condition.

10

The Complaint does not rest solely on the accuracy of the deputies' communications. It alleges a straightforward failure to summon care during the hours Mr. White lay deteriorating in his cell: that he "spent several hours laying in his cell and suffering from obvious signs of a stroke," and only "[a]fter laying in his cell for several more hours, suffering irreversible harm," was taken back to a hospital. (Compl. ¶¶ 37–38.) It alleges that the deputies "failed to attend to WHITE, and failed to summon medical care for him." (Compl. ¶ 91.) Taken as true, those allegations describe a failure to reasonably summon immediate care for a worsening, obvious emergency—the core of § 845.6.

The gravity of leaving such a condition unattended is well recognized. In Gordon, the Ninth Circuit reaffirmed that "a prison official who is aware that an inmate is suffering from a serious acute medical condition violates the Constitution when he stands idly by rather than responding with reasonable diligence to treat the condition," 6 F.4th at 972 (quoting *Sandoval v. County of San Diego,* 985 F.3d 657, 679–80 (9th Cir. 2021)), and recognized a pretrial detainee's right to "direct-view safety checks sufficient to determine whether [his] presentation indicates the need for medical treatment," *id.* at 972–73. Whatever the precise statutory contours, the conduct alleged—deputies leaving an obviously stroke-stricken arrestee to deteriorate for hours without summoning care—lies at the heart of what § 845.6 forbids.

The County's "summoned twice" argument misapprehends the statute. The Ninth Circuit has held that "immediate medical care" under § 845.6 "includes both diagnosis and treatment," and that the need "can arise more than once in relation to an ongoing" condition. *Jett,* 439 F.3d at 1099. An initial pre-booking "medical clearance" therefore did not discharge the deputies' duty when a fresh and obvious need arose as Mr. White's stroke visibly progressed over hours in his cell. Failing to summon care while an obvious stroke ran its course for hours is a failure to act timely.

11

Whether the deputies knew or had reason to know of Mr. White's need and failed to timely summon care is a question of fact that cannot be resolved on the pleadings. The Complaint alleges the deputies knew or should have known of his obvious and worsening emergency. (Compl. ¶¶ 51–55, 82, 93.) Courts routinely hold that "whether or not the defendants knew or should have known of [a detainee's] need for immediate medical care [is] largely a question for the 'trier of fact,'" not a basis for dismissal. *Mendoza v. County of San Bernardino,* No. EDCV 19-1056 JGB (SHKx), 2020 WL 2066142 (C.D. Cal. Feb. 21, 2020); *see also Horton v. City of Santa Maria,* 915 F.3d 592 (9th Cir. 2019) (reversing summary judgment where a jury could find a § 845.6 violation). The County's premise that the deputies held a "reasonable, if mistaken" belief that Mr. White was intoxicated cannot be resolved in its favor on the pleadings, for the reasons in Section B. If a § 845.6 claim can survive summary judgment on a developed record, it is plainly adequate here. The Sixth Cause of Action should not be dismissed.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant County of Los Angeles' Motion to Dismiss. Should the Court grant any portion of the motion, Plaintiff respectfully requests leave to amend.  Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis,* 371 U.S. 178, 182 (1962).

Dated: June 22, 2026            **LAW OFFICES OF DALE K. GALIPO**

By:    */s/    Cooper Alison-Mayne*
Dale K. Galipo
Cooper Alison-Mayne
*Attorneys for Plaintiff*

12

**Certificate of Compliance**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains **3,571** words, which complies with the 7,000 word limit of L.R. 11-6.1.

Dated: June 22, 2026          **LAW OFFICES OF DALE K. GALIPO**

By:   /s/   *Cooper Alison-Mayne*
      Dale K. Galipo
      Cooper Alison-Mayne

      *Attorneys for Plaintiff*